# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM KENT CARDWELL | : | CIVIL NO. 1:09-CV-1677 |
| Petitioner, | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| RAYMOND LAWLER, et al., | : | |
| Respondents. | : | |

# REPORT AND RECOMMENDATION

## I. Statement of Facts and of the Case

### A. Introduction

More than eight years ago, on June 20, 2001, William Cardwell is alleged to have indulged in a sexual assault on a minor, conduct which resulted in Cardwell being charged in six counts with involuntary deviate sexual intercourse with a victim under 16 years of age, aggravated indecent assault without consent, terroristic threats, corruption of minors, and endangering the welfare of children. (Doc. 10, Ex. A.) Almost seven years ago, in December of 2002, Cardwell was convicted of these crimes following a jury trial, and was sentenced to ten to twenty-eight years in prison for his involvement in this sexually predatory conduct. (Doc. 10, ¶ 4.) More than four years ago, on July 7, 2005, Cardwell exhausted his direct appeals of this state court conviction. (Doc. 10, ¶ 6.) Some 47 months ago, in November 2005, Cardwell launched a collateral attack upon his conviction in state court by filing a petition for

relief under Pennsylvania's Post Conviction Relief Act. (Doc. 10, ¶ 7.) After state court proceedings which spanned more than two years, some 22 months ago, in December 2007, Cardwell's Post Conviction Relief Act petition was denied by the Court of Common Pleas of Dauphin County, (Doc. 10, ¶ 10), a ruling which Cardwell appealed to the Pennsylvania Superior Court . (Doc. 10, ¶ 11.) More than 14 months ago, in June of 2008, Cardwell's appeal was dismissed because of a fundamental procedural default by Cardwell; namely, Cardwell's failure to file a brief in support of this appeal. (Doc. 10, ¶ 12.)

Now-eight years after the alleged offense, seven years after his conviction, approximately four years after Cardwell exhausted his direct appeals and began a state collateral attack upon this conviction, and 14 months after Cardwell's last state criminal appeal was dismissed because of Cardwell's failure to timely litigate his claims-Cardwell comes to federal court seeking a writ of habeas corpus overturning this state conviction.

For the reasons set forth below, it is recommended that Cardwell's petition for writ of habeas corpus be denied as untimely.

### B. Procedural History of the State Prosecution

This is a case with a lengthy, and tortured, litigation history. The story of William Cardwell's case begins on June 20, 2001, with an alleged sexual assault upon

a minor girl, an assault which resulted in Cardwell being charged in six counts with involuntary deviate sexual intercourse with a victim under 16 years of age, aggravated indecent assault without consent, terroristic threats, corruption of minors, and endangering the welfare of children. (Doc. 10, Ex. A.) This episode then inspired almost seven years of protracted state court litigation.

Cardwell was tried for his role in these offenses and convicted of all counts in August 2002. (Doc. 1, ¶ 2.) On December 6, 2002, Cardwell was sentenced by the Court of Common Pleas of Dauphin County to ten years and three months to twenty-eight years in prison for his involvement in this sexual exploitation of a minor. (Doc. 10, ¶ 4 .) On February 19, 2004, the Superior Court of Pennsylvania affirmed his judgment of sentence. (Doc. 10, ¶ 5 .) On July 7, 2005, the Supreme Court of Pennsylvania denied his petition for allowance of appeal, foreclosing any further direct appeal of this conviction.(Doc. 10, ¶ 6 .)

Unsuccessful in his direct challenge to this state conviction, Cardwell then waited almost five months before he commenced a collateral attack upon this conviction on November 21, 2005, by filing a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq. (Doc. 10, ¶ 7 .) Cardwell's initial petition was denied on May 3, 2006. (Doc. 10, ¶ 7 .) Cardwell then filed a notice of appeal on May 22, 2006, relating to the order issued

May 3, 2006, denying this PCRA petition. (Doc. 10, ¶ 8 .).

On May 8, 2007, the Superior Court of Pennsylvania vacated the Court of Common Pleas' order and remanded the case with instructions. (Doc. 10, ¶ 9.) Following further proceedings, on December 6, 2007, the Court of Common Pleas once again dismissed Cardwell's amended PCRA petition. (Doc. 10, ¶ 10 .)

Cardwell then filed yet another notice of appeal on January 3, 2008, relating to the December 6, 2007 order dismissing his amended PCRA petition. (Doc. 10, ¶ 11.) Cardwell neglected to timely pursue this appeal, however, and failed to file any brief in support of this, his third appeal in the state court system stemming out of his 2002 conviction for assaulting a minor girl in the summer of 2001. As a result of this default on Cardwell's part, on June 16, 2008, the Superior Court of Pennsylvania dismissed Cardwell's appeal for failure to file a brief. (Doc. 10, ¶ 12 .) Cardwell took no steps to further litigate this claim in state court, and did not seek relief in the Supreme Court of Pennsylvania relating to the dismissal of his appeal. (Doc. 10, ¶ 12 .)

### C. Cardwell's Federal Habeas Petition

Indeed, Cardwell took no action whatsoever in this case for more than fourteen months, until August 28, 2009, when he filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Cardwell's petition provides no explanation for his lengthy delay in filing this action, a delay that is particularly

puzzling since the issues raised by Cardwell in his petition relate to trial rulings made in his state trial in August of 2002, matters which would have been known to Cardwell for the past seven years.[1]

The Commonwealth has now filed an initial response to this petition which asserts that this petition is barred by the one-year statute of limitations which applies to state habeas actions under 28 U.S.C. § 2244. For the reasons set forth below, we recommend that Cardwell's petition be denied as time-barred.

## II. Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

---

[1] In his motion Cardwell complains that the state courts, and his own counsel, erred in failing to enter a judgment of acquittal in his favor on the charge of aggravated indecent assault. Cardwell also contends that the trial judge and his counsel erred in not indulging in further cross-examination of the victim regarding her mental condition, and in failing to engage in questioning of the victim in this case regarding episodes of sexual molestation relating to a friend of the victim, cross examination which Cardwell claims was relevant on the speculative theory that the molestation of her friend may explain why the victim would fabricate a claim that she was molested.

**(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1.) Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where

the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

### (2.) Procedural Benchmarks for Habeas Petitions

#### ( a. ) Statute of Limitations

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that petitioners timely file motions seeking habeas corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 224(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is also clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, one which enables petitioners to toll their filing

deadlines for the time periods in which they could have sought further appellate review of their cases, even if they did not, in fact, elect to seek such review.

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d at 617-18, and therefore is subject to equitable tolling. Id. at 618-19.Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.
>
> Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, Courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Thus, while tardy habeas petitioners often invite courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3d.Cir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d. Cir. 2002)(same).

### B. Cardwell's Petition is Time-Barred by AEDPA's Statute of Limitations

In this case, the Commonwealth argues as a threshold matter that Cardwell's petition is now barred by § 2244(d)'s one-year statute of limitations. Our analysis of the delays which have plagued this litigation over the past eight and one half years convinces us that these claims are, in fact, now time-barred.

The history of this case reveals that Cardwell was convicted in December of

2002, and pursued direct appeals of this conviction through July 7, 2005, when the Pennsylvania Supreme Court denied his petition for allowance of appeal. All of this time, plus an additional 90 days for a potential petition for writ of certiorari, a writ that Cardwell never sought, would be tolled under § 2244(d)(2) from any statute of limitations calculations. See Swartz, 204 F.3d at 419. Thus, Cardwell's one-year limitation period began to run on or about October 7, 2005.

Approximately 44 days later, on November 21, 2005, Cardwell filed a collateral attack on his conviction under the Pennsylvania Post Conviction Relief Act ("PCRA"). These PCRA proceedings then further tolled the operation of the statute of limitations, until June 16, 2008 when the Pennsylvania Superior Court dismissed Cardwell's appeal of the denial of his PCRA petition because of Cardwell's failure to file a timely brief. Allowing Cardwell an additional 30 days to exercise his option to file a petition for allowance of appeal with the Pennsylvania Supreme Court, something Cardwell did not elect to do, see Swartz, 204 F.3d at 419, these collateral proceedings further tolled AEDPA's statute of limitations until July 18, 2008. Cardwell then brought this habeas petition on August 28, 2009, more than 400 days after he forfeited his last opportunities for collateral review in the Pennsylvania courts by failing both to file a brief in the Pennsylvania Superior Court and to seek an allowance of appeal from the Pennsylvania Supreme Court. When this delay–which itself exceeds one year–is

coupled with the delay between the conclusion of Cardwell's direct appeal, and the commencement of his PCRA proceedings, a total of nearly 450 days elapsed prior to the filing of this petition, a period of time which falls well beyond § 2244(d)'s statute of limitations. Thus, on its face, Cardwell's petition is untimely and falls outside § 2244(d)'s one-year limitation period.

Nor can we find any extraordinary circumstances of the type which would justify equitable tolling of this limitations period. In this regard, it is incumbent upon Cardwell to demonstrate that: "the petitioner has '**in some extraordinary way** ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Miller, 145 F.3d at 618-19 (citations omitted)(emphasis added).

Cardwell cannot meet this burden of proving extraordinary circumstances justifying tolling of this limitations period. Quite the contrary, in this case several factors weigh heavily against equitable tolling of the limitations period for Cardwell. At the outset, equitable tolling would be particularly inappropriate here, given the nature of the claims that Cardwell seeks to advance in a tardy fashion. In his motion Cardwell complains that the state courts should have entered a judgment of acquittal in his favor on the charge of aggravated indecent assault. Cardwell also contends that

the trial judge and his counsel erred in not indulging in further cross-examination of the victim regarding her mental condition, and in failing to engage in questioning of the victim in this case regarding episodes of alleged sexual molestation relating to a friend of the victim, cross examination which Cardwell claims was relevant on the speculative theory that the molestation of her friend may explain why the victim would fabricate a claim that she, too, was molested.[2]

These claims involve evidentiary rulings which would have occurred, and been apparent to Cardwell, at the time of his August 2002 trial. Therefore, Cardwell simply cannot now show "that he . . . 'exercised reasonable diligence in investigating and bringing [the] claims.'" Miller, 145 F.3d at 618-19 (citations omitted). Rather, the history of this litigation affirmatively reveals that Cardwell has been dilatory in pursuing this matter, not only by delaying the filing of this federal petition for more than a year, but also by failing to timely pursue his claims in the state courts.

---

[2]Aside from the fact that the claims cited by Cardwell in his petition would have been known by the petitioner for the past eight years, we note that these claims have dubious merit. Indeed, habeas claims, like those advanced by Cardwell, premised upon alleged unfair restrictions on cross-examination, have been rejected in the past by the courts, which assess these claims under a harmless error standard. See Wright v. Vaughn, 473 F.3d 85 (3d Cir. 2006). Similarly, the denial of a motion for judgment of acquittal, or new trial, by a state judge, standing alone, does not present a meritorious habeas claim. See Szuchon v. Lehman, 273 F.3d 299 (3d Cir. 2001)(denial of motion for new trial). However, because the claims are clearly time-barred we need not ultimately reach these issues.

Yet, while Cardwell has made no showing of extraordinary circumstances on his part which would justify tolling this limitations period, there are substantial interests that weigh in favor of holding Cardwell strictly to the limitations period prescribed by law. These countervailing interests include the strong societal interests favoring finality in litigation, as well as the institutional interests of the criminal justice system, which favor prompt presentation and resolution of disputes. However, when considering a statute of limitations question in the context of a belated collateral attack upon a criminal conviction arising out of the sexual exploitation of a child, there is also an important human dimension to the statute of limitations. In 2002, a jury found that William Cardwell sexually assaulted and exploited a minor girl. Cardwell has had multiple opportunities to contest his guilt before a jury, on direct appeal, in collateral proceedings in state court, and in an appeal of those collateral proceedings. To ignore the limitations period prescribed by law, and permit Cardwell to belatedly re-open this thoroughly litigated case, would compel the minor victim in this case to, once again, experience the trauma of those events. Since Cardwell has not fulfilled his responsibility to bring this petition in a timely manner, and has not carried his burden of showing extraordinary circumstances justifying a tolling of the statute of limitations, he should not be entitled to compel the government to require his victim to revisit these events.

In short, Cardwell's petition invites this court to ignore his procedural defaults, discount the statute of limitations, and re-open an eight year old case that has been completely litigated in the state courts, without considering the potential harm which could be experienced by the victim if she was required to endure these events once again. Since Cardwell's request flies in the face of the law, and cannot be justified on the facts, this court should decline Cardwell's invitation, and deny his petition for writ of habeas corpus. <u>See, e.g.</u>, <u>Merritt v. Blaine</u>, 326 F.3d 157 (3d.Cir. 2003)(denying equitable tolling request); <u>Robinson v. Johnson</u>, 313 F.3d 128 (3d. Cir. 2002)(same).

### <u>III</u>.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2

shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of October 2009.

                              *S/Martin C. Carlson*
                              **United States Magistrate Judge**